UNITED STATES v. LEHIGH VALLEY R. CO.

(District Court, S. D. New York. March 26, 1915. On Settlement of
Decree, April 6, 1915.)

No. 375.

CARRIERS ☞32—REGULATIONS—"REBATE"—"SHIPPER"—FORWARDER.

A forwarder of freight, who sends in his own name all the freight he
can over a carrier, which, in consideration of the business thus obtained,
pays him a commission or salary calculated on the freight moneys receiv-
ed by the carrier from him, is a "shipper," and the payment in form of
commission or salary or otherwise is a "rebate" or concession in viola-
tion of the Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380
(Comp. St. 1913, § 8569), and Elkins Act Feb. 19, 1903, c. 708, 32 Stat. 847,
§ 1, as amended by Act June 29, 1906, c. 3591, 34 Stat. 587, § 2 (Comp. St.
1913, § 8597).

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec.
Dig. ☞32.

For other definitions, see Words and Phrases, First and Second Series,
Rebate.]

In Equity. Suit by the United States of America against the Le-
high Valley Railroad Company. Heard on bill and answered. Decree
for complainant.

John C. Knox, Asst. U. S. Atty., of New York City, and Charles
W. Needham, of Washington, D. C., for the United States.

Allan McCulloh, of New York City, for defendant.

HOUGH, District Judge. Sheldon & Co. are forwarders, a busi-
ness the nature of which is sufficiently stated in Interstate Commerce
Commission v. D., L. & W. R. R. Co., 220 U. S. 235, 31 Sup. Ct. 392,
55 L. Ed. 448. These particular forwarders send all the goods they
can over the Lehigh Valley, and have done so for a long time. In
consideration of the business thus obtained the defendant pays to
Sheldon & Co. a commission calculated upon the freight moneys (at
published tariff rates) received by the railroad from Sheldon & Co.

The object of this bill is to prevent the continuance of this prac-
tice, for the reason that Sheldon & Co. are shippers, and when they
get a commission upon freights which they themselves have paid they
necessarily obtain a rebate or concession in violation of the Interstate
Commerce Act as amended to August 24, 1912, in section 6 there-
of, viz.:

"Nor shall any carrier refund or remit in any manner or by any device any
portion of the rates, fares, and charges so specified, nor extend to any shipper
or person any privileges or facilities in the transportation of passengers or
property, except such as are specified in such tariffs."

It is also said that such payment of commissions is in violation of
the Elkins Act as amended June 29, 1906, viz.:

"It shall be unlawful for any person * * * to * * * receive any
rebate, concession, or discrimination in respect to the transportation of any
property in interstate or foreign commerce by any common carrier subject to
said act to regulate commerce * * * whereby any such property shall by

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier."

It is assumed that all the freight sent by Sheldon & Co. over the Lehigh Valley, and in respect of which commissions are paid, is freight not owned by said Sheldon & Co., but as to which they act as forwarders only. This does not make Sheldon & Co. any the less a shipper.

The relation of shipper and carrier is formal, and must respond to certain well-known tests. It has no relation to ownership. A shipper is one who ships even when he has no right so to do, but a forwarder is one whose business it is to ship; and I am unable to see how it can be doubted (and I do not think it has been denied) that when Sheldon & Co. send goods over the Lehigh Valley road in their own name they are in a position to insure, to demand and receive delivery, and to recover for breaches of the contract of carriage entered into between themselves and the carrier. These are the indicia of the formal and legal relation entered into by the issuance of a shipping receipt or bill of lading. I have no doubt that Sheldon & Co. are to be regarded as shippers for every purpose, and consider this conclusion to be supported by Great Northern R. R. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703.

The railroad seeks to justify its custom by asserting the right to pay commissions to those who bring it business, and in support of this proposition cites United States v. D., L. & W. R. Co. (C. C.) 152 Fed. 269, where the court said:

"The carrier has a right to employ persons to solicit business, just as it had a right to employ clerks and employés of all kinds to do the business, and any payments for such a purpose cannot constitute a rebate, concession, or discrimination within the meaning of the act."

This is all true; but I do not think that the situation is brought within this decision when a shipper is employed, and the amount of his wage or the value of his services is regulated or gauged by the freight value of his shipments. The result may be perfectly normal (though the method is capable of great abuse); but said result in my judgment is illegal because of the bald fact that, when the dealings between Sheldon & Co. and the railroad are ended, Sheldon has finally paid less for the transportation of goods in which he had a special property, and as to which he was a shipper, than did other persons not engaged in the forwarding business.

It is obvious, also, that if the real owner of the goods preferred to send over some railroad other than the Lehigh Valley, Sheldon & Co. as forwarders would be obliged to acquiesce in their customer's desire, and would get no commission upon goods so forwarded. I am quite willing to admit that in this particular instance (as is elaborately set forth in the answer) there is nothing wrong, dishonest, or immoral in the transactions complained of; but they seem to me to be against the letter of the law, and I am further of opinion that such letter must be strictly enforced in order to preserve equality among shippers, for the abuse of granting commissions to any large shipper is so patent and so ancient as not to require further comment.

This conclusion has not been reached without due consideration of the charge to the jury of the late Judge Martin in the case of United States v. Sheldon. From the charge alone (which is all I have before me) I should hesitate to think that the matter before Judge Martin was put in exactly the same way as is this cause; but even if these very facts were contained in an indictment, instead of a bill in equity, Judge Martin's decision (if applicable) would be to me but another illustration of the radical difficulty of attempting to "govern by indictment" and of securing convictions for statutory violations involving no moral turpitude. Even judges instinctively "shy" at branding as a convict any man for failing promptly to square an honest business with new-fangled statutes, and permitting or encouraging juries to find that criminal intent which is still a prerequisite for conviction under such circumstances.

The complainant will take a decree forbidding the continuance of commission payments to Sheldon & Co. under the circumstances revealed by bill and answer.

### On Settlement of Decree.

The decree proposed by the United States attorney specifically enjoins the defendant from continuing to pay George W. Sheldon & Co. "any and all sums of money, whether the same be in the form of commissions, *salary,* or otherwise, and which may have accrued, and which would accrue, but for this decree, under and pursuant to the contracts and understandings hereinbefore adjudged and decreed to be unlawful." It is now suggested (and probably with truth) that my opinion was not clear as to whether moneys could or could not be paid to George W. Sheldon & Co. under the name of salary and as compensation for that corporation's activities in procuring freight for the Lehigh Valley.

It is in my judgment just as much an infraction of the law to pay a shipper a salary for shipping his own freight as it is to pay him a commission for doing the same thing. This whole case revolves around the question whether under all the circumstances shown Sheldon & Co. are to be regarded as shippers for every purpose. I think they are shippers, and any form of compensation to them for shipping is against the law.

I have accordingly signed the decree as proposed.